IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KAYLA NOORLUN,**

             Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner, Social Security
Administration,

             Defendant.

3:14-CV-02024-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge.

Plaintiff Kayla Noorlun ("Noorlun") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") in which she denied Plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the court finds the decision of the Commissioner is **REVERSED** and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for

1- OPINION AND ORDER

further administrative proceedings consistent with this Opinion and Order.

*Administrative History*

Plaintiff filed her applications for DIB and SSI on September 19, 2011, and alleged a disability onset date of February 23, 2010, due to "depression, anxiety, and multiple sclerosis ." Tr. 357.[1] The applications were denied initially and on reconsideration. An Administrative Law Judge ("ALJ") held a hearing on May 7, 2014. Tr. 42-82. At the hearing Plaintiff was represented by an attorney. Plaintiff and a vocational expert ("VE") testified. Plaintiff amended her alleged onset date to February 23, 2010, which is after her date last insured. Accordingly, Plaintiff's Title II application was withdrawn.

The ALJ issued a decision on July 14, 2014, in which he found Plaintiff was not disabled. Tr. 20-31. That decision became the final decision of the Commissioner on October 16, 2014, when the Appeals Council denied Plaintiff's request for review. Tr. 1-7.

On December 18, 2014, Plaintiff filed a complaint in this court seeking review of the Commissioner's decision.

*Background*

Plaintiff was 22 years old on the amended alleged onset date. Tr. 30, 48. She has a high school diploma from an unaccredited institution and completed a general educational development ("GED") certificate. Tr. 48-49, 358. Plaintiff did not attend special education classes. Tr. 413. She has work experience as a cashier, clerical assistant, gas pumper, and barista. Tr. 336, 359, 385-89, 413, 418.

---

[1] Citations to the official transcript of record filed by the Commissioner on June 9, 2015, are referred to as "Tr."

*Standards*

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674

F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to

engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous

evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod*

*v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th

Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C.

§ 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).

Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to

support a conclusion." *Molina*, 674 F.3d. at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*,

574 F.3d 685, 690 (9th Cir. 2009)). It is "'more than a mere scintilla [of evidence] but less than a

preponderance.'" *Id.* at 1110-11 (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical

evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The

court must weigh all of the evidence whether it supports or detracts from the Commissioner's

decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the

evidence is susceptible to more than one rational interpretation, the court must uphold the

Commissioner's findings if they are supported by inferences reasonably drawn from the record.

*Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

*Disability Evaluation*

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 ("Listed Impairments").

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

4- OPINION AND ORDER

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

*ALJ'S Findings*

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her February 23, 2010, alleged onset date. Tr. 22. Her date last insured was June 30, 2009.

At Step Two the ALJ found Plaintiff has severe impairments of degenerative disc disease of the lumbar spine, multiple sclerosis ("MS"), migraine headaches, cognitive disorder not otherwise specified, major depressive disorder, and anxiety disorder. *Id.*

At Step Three the ALJ determined Plaintiff's impairments did not equal in severity a listed impairment, and found Plaintiff retained the RFC to stand and walk for about two hours and sit for more than six hours with normal breaks, and can lift, carry, push, and pull within sedentary exertional limits. She can never climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs, and balance. Plaintiff can frequently handle and finger. In order to avoid headache

triggers, Plaintiff can perform work in which concentrated exposure to fumes, odors, dusts, gases or poor ventilation is not present. Plaintiff can perform work in which hazards, such as heavy machinery and unprotected heights, are not present. In order to meet ordinary and reasonable employer expectations regarding attendance, work place behavior, and production, Plaintiff can understand, remember, and carry out unskilled, routine, repetitive work. Tr. 24.

At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 29.

At Step Five, the ALJ found Plaintiff was capable of performing other work, including election clerk, document preparer, and circuit board assembler. Tr. 30-31.

## Discussion

Plaintiff contends the ALJ erred by (1) failing to find borderline intellectual functioning a severe impairment at step two; (2) failing to consider whether Plaintiff's limitations met or equaled Listing 12.05©; (3) finding Plaintiff less than fully credible; (4) improperly determining her residual functional capacity; and (5) failing to show Plaintiff retains the ability to perform other work in the national economy.

I.  Step Two.

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or

handling." 20 C.F.R. § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 U.S. at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 C.F.R. § 404.1508.

Plaintiff contends the ALJ erred by failing to find borderline intellectual functioning a severe impairment at step two, pointing to the January 2012 examination by Donna C. Weicher, Ph.D. Tr. 657-63. Dr. Weicher reviewed records, conducted a mental status examination, and administered the WAIS-IV and WMS-IV. Tr. 657. Plaintiff had a Full Scale IQ score of 78. Tr. 660. Dr. Weicher diagnosed Depressive Disorder, NOS; rule out Cognitive Disorder, NOS; Panic Disorder without agoraphobia; and Borderline Intellectual Functioning. Tr. 661. However, as the ALJ noted, Dr. Weicher also stated that Plaintiff's "overall level of cognitive functioning is sufficient to allow her to work. . . ." Tr. 663.

The ALJ cited the August 2010 examination by Elaine Greif, Ph.D. Tr. 27, 551-58. Dr. Greif administered the WAIS-IV and WMS-IV. Plaintiff's cognitive test scores fell in the extremely low range, including a Full Scale IQ of 67. Tr. 552. Dr. Greif diagnosed Cognitive Disorder, NOS, and Adjustment Disorder with Depressed Mood. However, Dr. Greif also stated that Plaintiff "did not appear fully alert during some of the evaluation and I hesitate to accept all performances, especially the extremely poor ones, as valid reflection of ability." *Id.* Dr. Greif stated she would

want to retest Plaintiff before making conclusions about her cognitive function.

The ALJ found Plaintiff had a cognitive disorder. Tr. 23. The diagnostic criteria for borderline intellectual functioning requires onset during the developmental period. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 38 (5th ed. 2013)("DSM-5"). The ALJ considered Plaintiff's adaptive functioning before her 2010 MS diagnosis, noting her history of semi-skilled work as a medical bill clerk. *Id.* The ALJ also considered the evidence that Plaintiff obtained her GED after studying for two weeks and passed on her first try. Tr. 48-49. She did not attend special education classes. Tr. 355, 358, 413. Plaintiff does not identify functional limitations not adequately addressed by the assessed cognitive disorder. On this record, the ALJ reasonably found a cognitive disorder at step two and that determination is supported by substantial evidence.

II. Listing 12.05©.

Plaintiff argues the ALJ erred by failing to consider Listing 12.05©. The Social Security Regulations "Listing of Impairments" describe impairments so severe that they are considered presumptively disabling if the listing criteria is satisfied, and the ALJ can stop at step three of the analysis and not consider a claimant's RFC. 20 C.F.R. § 416.920(d). The Listing provides in relevant part:

> 12.05 *Intellectual disability:* intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this dis-order is met when the requirements in A, B, C, or D are satisfied.
>
> * * * *

8- OPINION AND ORDER

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
> other mental impairment imposing an additional and significant work-related
> limitation of function. . . .

20 C.F.R. § Pt 404, Subpt. P, App.1 Section 12.05.

The test for whether a claimant meets Listing 12.05© is whether a claimant demonstrates (1) a mental impairment shown by adaptive deficits with onset before age 22; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.  *Id., see also Thresher v. Astrue,* 283 F. App'x 473 (9th Cir. 2008);  Pedro v. Astrue, 849 F. Supp. 2d 1006, 1011 (D. Or. 2011). Here, the second element is at issue.

The Ninth Circuit recently confirmed that IQ testing plays "a particularly important role in assessing the existence of intellectual disability."  *Garcia v. Comm'r of Social Security,* 768 F.3d 925, 931 (9th Cir. 2014).  Because meeting the listing conclusively determines that a claimant is disabled, his or her IQ score can be a deciding factor in determining intellectual disability.  *Id.*  The *Garcia* court found that the ALJ must rely on complete, not partial, IQ scores.  *Id.*  Social Security Regulations specify the use of the "Wechsler series" of IQ tests in evaluating a claimant's IQ.  *Id.*

Plaintiff completed the Wechsler IQ test in January 2012.  Tr. 657-63.  She contends her "verbal processing" score of 68 meets or equals the Listing 12.05© requirement for a "valid verbal, performance, or full scale IQ of 60 to 70."  The quoted statutory language mirrors the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) released in 1997, which provided scores for Verbal IQ, Performance IQ, and Full Scale IQ, along with four secondary indices (Verbal Comprehension, Working Memory, Perceptual Organization, and Processing Speed).

However, the WAIS-III was replaced in 2008 by the WAIS-IV.  *See* Press Release, Wechsler

9- OPINION AND ORDER

Adult Intelligence Scale, Fourth Edition (Aug. 28, 2008), available at http://www. Pearsonclinical.com/psychology/news/2008/wechsler-adult-intelligence-scale-fourth-edition-now-available-from-pearson.html (last visited May 26, 2016). Plaintiff was given the WAIS-IV. 657-63. The WAIS-IV measures four index scores representing major components of intelligence: verbal comprehension, perceptual reasoning, working memory, and processing speed. The Full Scale IQ score is comprised of the combination of the four index scores. Plaintiff scored 68 on the processing speed index. Tr. 660. However, her Full Scale IQ score was 78. Id. Plaintiff presents no evidence that a "processing speed index" score is the equivalent of a "valid verbal, performance, or full scale IQ of 60-70." 20 C.F.R. § Pt.404, Subpt. P, App. 1 Section 12.05.

On this record, the ALJ did not err by failing to consider Listing 12.05©.

III. Credibility.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, '" the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific,

clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms...other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen,* 80 F.3d at 1284.

The ALJ found Plaintiff not fully credible as to the intensity, persistence, and limiting effects

of her symptoms, citing inconsistencies between Plaintiff's testimony and the treatment records, Plaintiff's daily activities, and Plaintiff's inconsistent treatment. Tr. 25.

### A. Inconsistencies between Plaintiff's allegations and the treatment records.

An inconsistency between a claimant's allegations and the treatment records is a valid reason to discount a claimant's credibility. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009). Plaintiff testified she had "constant tremors," but the ALJ noted that her neurologist did not record those symptoms. Tr. 26, 70. Plaintiff testified she experienced symptoms from MS 90 percent of the time. Tr. 68. However, between January 2010 and September 2011 her neurologist consistently reported normal testing of rapid alternating movement (RAM) of her hands, negative Romberg testing, normal gait, and normal strength is all extremities. Tr. 26, 672, 675, 678, 687.

The ALJ cited an October 2010 comprehensive neurological examination by John H. Ellison, M.D., in which the doctor reported Plaintiff had good range of motion, negative Romberg, normal gait, and normal grip and strength. Tr. 26, 651.

The ALJ noted February 2012 records indicating Plaintiff had severe back pain with MS exacerbations. Tr. 27, 774. Plaintiff reported this exacerbation happened twice in the past two years, and usually lasted less than one week. *Id.* In November 2012, Plaintiff's treating physician noted her MS was stable on Avonex therapy. Tr. 1159.

The ALJ observed that although Plaintiff reported being sleepy and groggy through the day, she consistently appeared alert and oriented at her appointments from January 2010 through July 2013. Tr. 26, 51, 714, 651, 770, 772, 774, 776, 1167, 1164, 1159, 1156.

The inconsistency between the treatment record and Plaintiff's allegations is a clear, convincing, and specific reason to find her less than fully credible.

12- OPINION AND ORDER

### B. *Symptoms improve with treatment.*

The ALJ noted that Plaintiff's symptoms improved with treatment. Tr. 25. The record supports the ALJ's finding, but this finding by itself but does not establish that Plaintiff lacks credibility.

### C. *Failure to seek treatment.*

The ALJ found Plaintiff less than fully credible because gaps in seeking treatment put the alleged severity of her impairments into question. Tr. 26. The ALJ may consider a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti,* 533 F.3d at 1039. Plaintiff testified she discontinued Avonex therapy because "I developed a needle phobia out of left field and then I quit taking it. . . ." Tr. 68. She did not see her treating neurologist during the following year. Tr. 670, 672, 676. The ALJ observed that if Plaintiff were a limited as she alleged, then she would have sought treatment. Tr. 26. Plaintiff now asserts that she had insurance issues. On this record, Plaintiff's failure to seek treatment and take medications as prescribed is a clear and convincing reason to find her less than fully credible.

### D. *Conservative treatment.*

The ALJ found Plaintiff not fully credible as to her assertions of back pain because her treating physician recommended conservative treatment, including anti-inflammatories and physical therapy. Tr. 27, 1159. An MRI showed no evidence of significant displacement of the nerve root. Evidence of conservative treatment "is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir. 2007).

### E. *Inconsistent reports.*

The ALJ found Plaintiff's reports inconsistent. Tr. 28. The ALJ cited Plaintiff's testimony

13- OPINION AND ORDER

that she gets anxious, with a racing heart beat, when she is around people, and particularly strangers. Tr. 59. However, Plaintiff also testified that she wanted to go to college and would prefer to attend classes in person rather than online. Tr. 54.

The ALJ provided several valid reasons to find Plaintiff not fully credible, and each is supported by substantial evidence. *Tommasetti,* 533 F.3d at 1039. On this record, the ALJ identified specific, legitimate, clear and convincing reasons to find Plaintiff less than fully credible as to the extent of her symptoms.

IV. Lay Witness Testimony.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill,* 12 F.3d at 918-19. The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible when the lay testimony repeats the limitations expressed in the claimant's testimony *Valentine*, 574 F.3d at 694.

The ALJ noted the lay statements reported Plaintiff had significant symptoms and very limited activities. Tr. 29. The ALJ gave the statements little weight, citing the medical record indicating Plaintiff's symptoms improved with treatment and were inconsistent with the medical evidence. An ALJ may disregard lay testimony when inconsistent with the medical record. *Bayliss*

*v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ did not err in assessing the lay testimony.

V.  Medical Opinion Evidence.

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss,* 427 F.3d at 1216.

Dr. Palla completed a residual functional capacity questionnaire in October 2013, in which she stated she saw Plaintiff every six months, and that Plaintiff had symptoms of memory difficulties, intermittent double vision, fatigue, low back pain, and headaches. Tr. 1178. Dr. Palla opined that Plaintiff could sit for six hours and stand for two hours in an eight hour day. *Id.* She opined Plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently. Tr. 1179. Dr. Palla thought Plaintiff would be absent from work three or four times per month, and was not physically capable of working an eight hour day, five days a week on a sustained basis. Tr. 1179.

The ALJ accepted portions of Dr. Palla's opinion and included the lifting limitations and the standing, walking, and sitting limitations in Plaintiff's RFC. Tr. 24, 28. The ALJ did not adopt the remaining limitations because they were not supported by Dr. Palla's treatment records. Tr. 28. This is a valid reason for an ALJ to discount a physician's opinion. *Connett v. Barnhart,* 340 F.3d 871,

875 (9th Cir. 2003). In Dr. Palla's examinations of Plaintiff, she observed Plaintiff retained intact strength in all extremities, with normal gait, and no sign of spasticity. Tr. 28, 1156, 1159, 1164, 1167. Plaintiff had normal muscle tone and range of motion in her back. *Id.* Dr. Palla stated Plaintiff's MS was stable on Avonex therapy, and recommended conservative treatment for her back pain. Tr. 1164.

The ALJ's rejection of portions of Dr. Palla's opinion is based on specific, legitimate reasons, and is supported by substantial evidence.

VI.  Step Five.

Plaintiff argues the ALJ improperly assessed her residual functional capacity and, accordingly, erred at step five. The "residual functional capacity is the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found Plaintiff could not perform past relevant work, but could perform other jobs that existed in the national economy, including work as an elections clerk, a document preparer, and circuit board assembler. Tr. 29-31.

Dr. Wicher examined Plaintiff and reported "[h]er persistence appeared to be adequate . . . . Her pace was variable. . . . Her overall deficits in concentration, persistence, and pace are estimated to be mild to moderate." Tr. 662-63. Dr. Wicher's opinion on this point is confirmed by Dr. Palla. Dr. Palla checked a box indicating Plaintiff's symptoms would "often" interfere with the attention and concentration required for simple work-related tasks. Tr. 1178. The ALJ found Plaintiff had "at most, moderate difficulties" with concentration, persistence and pace, and limited her to "unskilled, routine, repetitive" work. Tr. 24. This was error. *Brink v. Comm'r Soc. Sec. Admin.,* 343 Fed. Appx. 211, 212 (9th Cir. 2009)(RFC of simple, repetitive work does not encompass "moderate difficulty with concentration, persistence, or pace"). This court has held that

an ALJ's finding that a claimant has "mild-to-moderate" difficulties in maintaining concentration, persistence, or pace is not adequately covered by an RFC limitation to simple, repetitive tasks. *Graybeal v. Astrue,* Case No. 3:10-cv-06387-PK, 2011 WL 6019434, at *4 (D. Or. Nov. 2, 2011); *Melton v. Astrue,* Case No. 09-cv-1000-BR, 2010 WL 3853195, at *8 (D. Or. Sept. 28, 2010).

The ALJ's residual functional capacity finding and hypothetical were not proper because, as set out above, they failed to include limitations for which there was support in the medical record, and which the ALJ accepted. Because the ALJ posed an incomplete hypothetical question to the vocational expert that failed to incorporate the residual functional capacity assessment, the vocational expert's testimony is not substantial evidence for the ALJ's step five finding.

Accordingly, the court remands this matter for further administrative proceedings consistent with this Opinion and Order specifically to allow the ALJ to pose a complete hypothetical question to the vocational expert at step five.

## Conclusion

For these reasons, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 26th day of May, 2016.

JOHN V. ACOSTA
United States Magistrate Judge